Good morning, and may it please the Court, CalCHIP Chase for EC PAIA LLC, with me at table are Lisa Schwarzwager and Lindsay McAneely. Your Honor, I hope to reserve five minutes for rebuttal. The appeals in this case, in the cross appeal, come before the Court on materially different procedural postures. The sole substantive claim that plaintiff's appeal was resolved by the District Court following a trial on the merits. After plaintiff's arrested, EC PAIA moved for Rule 52, Judgment on Partial Findings. The Court then stayed the trial, considered the motion, and ultimately granted it. All of the other appeals that plaintiffs take up are from post-trial motions for fees and costs. In contrast, EC PAIA appeals from the entry of summary judgment on its counterclaim. Because the District Court had stayed the trial, after the District Court entered the judgment on partial findings, instead of reopening the trial to consider EC PAIA's counterclaim, the Court invited and then decided against EC PAIA on a motion for summary judgment. Because EC PAIA had reserved its examination of its witnesses and the presentation of its evidence for the counterclaim, the District Court never heard or considered EC PAIA's summary judgment. Now, was it, as I understand it, when the trial was stayed, the immediate predicate was because of a concern about the waiver and whether it survived under California law. But was it clear by the time it got to summary judgment that it was a complete summary judgment as to the facts as well? You don't really complain about that, as I understand it. You mention it, but you don't, you seem to think that by the time it actually was teed up, all the parties understood that it was a summary judgment on the merits as well. Partially correct, Your Honor. So, when the case was stayed, it was to consider the Rule 52 motion, and that decision took some time. Rather than reopening the trial then to hear the counterclaim, the Court did initially advise that it wanted briefing on the question of waiver. Plaintiffs went ahead and briefed the entire summary judgment. In response to that, we also briefed the entire summary judgment rather than merely briefing the waiver. Which included the testimony at the trial, or it didn't? In part, we included testimony that was elicited at trial. However, my examination was limited to cross-examination. I did not examine any witness on our counterclaim, and I did not call any witness or present any witness. Instead, the briefing was entirely on summary judgment, and the Court is correct, or Your Honor is correct. We don't complain about the procedural way that was handled, because we do believe we had an opportunity to brief it, even if it was irregular. What we complain about on our summary judgment is two things. The first is the application of Section 1668 in a way that did not prevent the waiver of the claim for negligent misrepresentation. There were two agreements that issued between the parties. A land agreement, which provided that E.C. Pailla would pay $4.3 million to acquire the right to buy a property from a third party, from Alexander and Baldwin. It was essentially a contract to acquire an assignment of a purchase contract. In addition to the payment of funds, E.C. Pailla agreed to transfer to two of the plaintiffs two lots, a residential and a commercial lot. It was undisputed at the time of contracting and the time of trial that those lots did not exist, because the zoning was not in place and because the subdivision was not in place. The second agreement is the parking lot agreement. Under that agreement, E.C. Pailla agreed to give three of the plaintiffs a license for a portion of that land in Pai'ia, Maui. As plaintiffs acknowledge in their papers, those agreements are separate and stand alone, and indeed they are. They don't involve identical parties. They each have their own independent consideration. They each have their own integration clauses, and they are governed by the laws of different states. The land agreement is governed by California law, which is why in considering whether E.C. Pai'ia had been fraudulently and negligently induced to enter that agreement, the court looked to Section 1668 to determine whether the release and waiver provisions applied. The court correctly concluded that Section 1668 did not allow the waiver of the claims for intentional misconduct, intentional nondisclosure and misrepresentation. The court erred in failing to apply that same protection to the claims for negligent misrepresentation. The court erred because it did not follow the most recent California appellate court cases on exactly this issue. In a series of cases beginning with Continental, the California appellate courts have held that a claim for negligent misrepresentation is saved from waiver by Section 1668. In other words, you cannot waive a claim for prospective or concurrent negligent misrepresentation. So the court relied on some cases that say that a claim for negligence is covered by Section 1668. Why was that not the right analysis here? Your Honor, it's correct. The court looked primarily to Tunkle, which is an earlier California Supreme Court case. That case dealt with ordinary negligence. That was a medical malpractice case. And so in that case, in reviewing it on appeal— But what do you mean by ordinary? Is it not involving a misrepresentation? Exactly. And so that's exactly right, Your Honor. That's the distinction that the appellate courts have subsequently drawn, is that for a claim of ordinary negligence, 1668 will save it from release only if the action concerns the public interest. The court adopted a series of factors. That is the analysis that the district court here applied to our negligent misrepresentation claim. What the court should have done is looked to Continental, to Blankenheim, to SI-59, subsequent California appellate court cases, all of which recognize that a claim for negligent misrepresentation is not ordinary. Is there any California case to the contrary as to negligent misrepresentation? Not that we have identified, Your Honor, or that has been cited to the court. They all uniformly look at Section 1668 and recognize that it is a statutory concept and that it incorporates definitions both in 1572 of the Code and 1710 of the Code, and that is protected against waiver. And so it was here. The second error of the district court in granting summary judgment on a counterclaim was in concluding that there was no genuine issue of material fact. The district court based that determination on two findings. The first finding is that EC PIA had not presented what the district court called actionable negligence. By that, the district court meant that all of the evidence of actionable misconduct, I should say, all of the evidence of actionable misrepresentations related to future events. In generalizing the evidence in that way, the district court overlooked the fact that details matter in a fraud claim, particularly if you're dealing with it on summary judgment. What the district court missed specifically by that generalization is one of the pieces of evidence we introduced is that Mr. Baskin had represented that A and B, the seller, Alexander and Baldwin, had a backup offer. The effect of that would mean that if EC PIA did not purchase the right to buy that property from Mr. Baskin, it risked losing it to the third party who had the backup offer. We presented evidence that that statement was made and evidence that that statement was false. The district court, in its order, did not even consider it. The district court's generalization also missed the details in the other examples that we presented. For example, we presented evidence that in writing Mr. Baskin had represented this property was entitled for development of 21 lots. The district court's own findings on the Rule 52 motion explain that there is no evidence the property was actually entitled for 21 lots or that an application for entitlement for those 21 lots had ever been introduced, yet the district court generalized that as relating to future events and was, in fact, a present entitlement. If we go through all the lists, we see the same mistake in the generalization, missing the details. Each claim relates to a present event, even if there are future predictions attached to it, such as the time required to develop or obtain the balance of the entitlements or the returns. They are all predicated on existing facts. The second way in which the district court erred on that finding is in failing to consider the exception under Hawaii law, and McElroy in particular, that provides future promises or predictions are actionable if they are made by an individual with specialized knowledge. Here Mr. Baskin held himself out as an experienced developer on Maui with 30 years of experience. He also held himself out as having... First of all, are you going to get to the areas in which you were the defendant? Yes, Your Honor. But as to this question, what about the justifiable reliance? The district court also said that there was no evidence of... Yes, Your Honor. And that is the second finding the district court made was that there was no justifiable reliance. In making that finding, the district court made two errors. One is overlooking the declaration in the record by Mr. Herbaut, the principal for E.C. Paia, that E.C. Paia did in fact rely on those representations and would not have entered into the agreement without them. The second is in failing to understand in a justifiable reliance situation, the context matters. We cannot look at an objective standard. We look at the individual actors and we compare them. And when you compare the individual actors in this case, you see Mr. Herbaut on one side who is an experienced businessman and has development experience in other states, but no development experience in Hawaii, and only 17 days from the beginning of this transaction to its conclusion to conduct due diligence. Contrast that with Mr. Baskin who held himself out as an experienced developer, 30 years in Hawaii, and having conducted extensive due diligence involving these specific properties on his own and through what he said were a cadre of experts. That information is the information that E.C. Paia did in fact rely upon. To conclude that that And my understanding is that before the deal closed, that there had come out all this public information in the papers about maybe he was a shyster. So I think that was what the judge relied on to sort of, that made all that go away. What is your view on that? Two things, Your Honor. You're quite correct. We did not present in the opposition to summary judgment evidence that we relied on his reputation with the county or his special insider connections to the county. Those are not a basis for our misrepresentation claims. Instead, we relied on the information that he provided and the statements that he made. Even though he had a poor relationship with the county, which the district court acknowledged, that does not mean that the things he is saying in his materials are false. And under Hawaii law, moreover, no one is presumed to need to distrust the party you're doing business with. You are entitled to trust the person to be honest with you, and you're not charged with the fault of failing to discover. So, I mean, your point would be that I guess it's a factual issue. Maybe ultimately you dig into the facts and you decide the factual issue, and you conclude what the judge concluded, but this shouldn't be decided as summary judgment. Will your counterclaim go to a jury, or will your counterclaim, if it goes back, go to the judge? It will go to the same judge. It is jury-waived. But even in a Rule 56 motion and a jury-waived trial, the non-moving party is still entitled to the favorable inferences and to treat all its statements of fact as fact. But you're quite correct that ultimately those are questions of fact, as they should be in a justifiable reliance situation. With those errors in place, the district court improperly granted summary judgment. This is a claim that should have been tried. Can I ask you, I'm sorry, I'm still, I'm sort of stuck on the whole, I understand your argument about the California case law on the negligent misrepresentation. It's essentially a species of fraud in these cases that say that it's not waivable. Why is negligent misrepresentation, what is the rationale as to why it's a species of fraud? Because maybe I'm just misunderstanding what negligent misrepresentation is, but I'm thinking of I misled you, but I didn't do it intentionally. I just was, I made statements that I shouldn't have made or something, you know. But why is that fraud? Maybe, and probably it doesn't matter, but I'm just curious as to why, it doesn't matter in the sense that we have to defer to whatever California's law is. Why is it fraud? So it's fraud in the sense of Section 1668. We have to remember that it's a statutory concept of fraud with statutory definitions at 1572. But I don't know if that answers my, because it seems to me like, the line that it seems to me that 16, that courts would draw would be, you can't waive intentional, you know, you can't waive intentional misconduct, right? That seems to, that's a pretty normal line to say you can't. But that's not the line here, it seems like, at least your argument. You're saying the California courts have said you can't, you can waive negligence, but you can't waive this one kind of negligence. I'm just trying to figure out what the rationale for that is. And so I actually do think it is addressed by statute, specifically 1572. If you look at the third category in the definition of fraud under 1572, it talks about providing information that you have no basis for based on what you know, right? And so that goes beyond merely intentionally misrepresenting something. The second point I would say is that both California and Hawaii are restatement states. And under the restatement, there is an element of intent in the sense that you are intending to provide guidance to the person who is hearing the information. It's far different from. You're playing fast and loose, I guess. You may not know you're lying, but you. You're not exercising. It's almost like recklessness or something. You're not exercising reasonable care, I think I would say. But the intent is in the element of you intend to the other person to rely on the information. You're providing guidance under the language of restatement section 552. And so it's based on that, going back to Continental, that the courts have uniformly held that negligent misrepresentation is not waivable under section 1668. Also, doesn't 1668 refer to responsibility for fraud or violation of law, whether willful or negligent? Right? So in the statute, it refers to negligence. It does refer to negligence. I do believe, Your Honor, that that section has pretty consistently been interpreted as only applying to statutory violations and not general negligence violations, which is why the appellate courts have created this distinction between ordinary negligence, which requires that the action be in the public interest, and not ordinary negligence, if you will,  I know the court wants me to address the balance of the appeal, and I'm certainly into my time already, so I'll try to do so quickly. Unlike the counterclaim, which was not tried, Mr. Baskin's sole substantive claim was tried. And it was tried on the theory that although the lots did not exist, E.C. Paillet had breached the agreement by failing to develop them faster. That was a breach of the times of the essence clause and of the duty of good faith and fair dealing. On those points, the district court entered 46 specific findings of fact, detailing the steps required to obtain the zoning and subdivision, the steps that E.C. Paillet had engaged in, and E.C. Paillet's intent to transfer those lots once they do exist. It found both Mr. Herbaut as the principal of E.C. Paillet and E.C. Paillet's project manager, Rory Frampton, to be credible. On appeal, plaintiffs do not challenge one of those findings, so they are all taken as true. And collectively, they support the district court's holding that there was no breach of the land agreement. Can I ask briefly about the fees question? I gather your basic position is that there was no appeal from the fees. With respect to 607.14, that is correct. They did not timely appeal that. Instead of appealing the award of fees, they appealed from the entitlement of fees. And they didn't even exactly appeal from that because they appealed from the reconsideration. That is true, which was post-judgment, Your Honor. So they appealed from the reconsideration. There is established Ninth Circuit precedent that that appeal is defective. It is not saved by Rule 4 because, unlike a situation where an order effectively resolves the entire case, leaving nothing but judgment to enter, the district court had more work to do, specifically request and receive, briefing on the amount of fees to be awarded, and then issue a fee decision awarding a specific amount. That decision was appealable. They did not come back and appeal it. Rule 4 does not save them. The balance of their arguments fair no better as the district court clearly followed Hawaii precedent in determining that an action on promissory estoppel is in the nature of a sumsit, and that the parking lot agreement had a fee-shifting clause, both of which entitle the prevailing party to fees under 607.14. With respect to the district court's findings on fees and on cost, determining that E.C. Payet was the prevailing party was based on the totality of the action in litigation before the court. With respect to apportionment, it was based on the number of claims that were litigated prior to the entry of summary judgment. All of those determinations by the district court are reviewed for abuse of discretion. Prior to the entry of summary judgment the first time around, not the second summary judgment. That is correct, Your Honor. We did not seek any fees after the entry of the first summary judgment, nor did we seek any fees related to the counterclaim. Based on that and based on the litigation that the district court had observed and been engaged in, it concluded that further apportionment was impossible. There's no basis to disturb that determination. There's no challenge here to the amount, exactly. That is correct, Your Honor. Plaintiffs do not challenge any particular fee or the total fee amount awarded. If there are no further questions, I'll reserve my balance of my time. Thank you. Mr. Revere. May it please the Court. Terry Revere for the Baskin Plaintiffs. I wanted, if I may, to focus on three things. The jurisdictional issue, the fees issue, and our belief that the court got the counterclaim right when he granted summary judgment, albeit in the middle of trial, which is obviously unusual. With regard to the jurisdictional argument, it is the defense's burden to show that the court properly had jurisdiction when we believe that we inserted, actually, a color photograph of the land in issue in our first amended complaint. This is a single-purpose entity that all it does is develop this land in Maui. All of its operations take place on Maui. It's an LLC. It's not a corporation, right? So for corporations, citizenship is the place of incorporation and the principal place of business. For LLCs, we sort of look through it to the citizenship of the members, just as we do with partnerships. And the member is another LLC, and its member is a California citizen. So what is your authority for the proposition that the principal place of business matters when we're looking at an LLC? Sure. Thank you, Your Honor. Yeah, and we cited the Davis v. HSBC Bank of Nevada case where the concurring judge said, basically, it's logical if we do this, if we look at the place of operations for a corporate entity, we should do the same thing for an uncorporated association. I think that's the crux of it. If the court accepts that argument, clearly all the operations are on Maui, and this never should have been in court in the first place. If it's different, then we ain't going to win that argument, Your Honor. So that's the authority that we have, the Ninth Circuit authority. I'm sorry. Can you – what was the case? Sure. It's Davis v. HSBC Bank of Nevada, 557 F. 3rd, 1026, 1032, Note 16, Ninth Circuit, 2009. Was that in your brief? Because I don't see it in the table. No, I'm looking at you. Oh, it's in the reply. I believe it's in the – I believe we did cite it, Your Honor, if I could just have a moment. Okay. And did that case involve an LLC? No, Your Honor. That involved an unincorporated association. So we would have to decide that LLCs need to – because you're basically saying we should use the nerve center test, which is from corporations, but you don't really have authority that says that that test applies if it's an LLC. We would have to decide something new to do that. That's correct, Your Honor. That's correct. And, Your Honor, moving on to the fees issue, Mr. Chip Chase is correct. We're not challenging the amount of the fees. We did our analysis, made our objections. The Court ruled the way he ruled. We do believe that the entitlement to fees was an error. But what is your authority for the fact that you have a proper appeal here on the fees? Your Honor, because we were challenging the entitlement to the fees, as opposed to the amount we believe that we did. But the entitlement was not a final judgment on the fees. And then when there was one, you didn't appeal it. And you didn't actually even appeal the entitlement. You only appealed the motion to reconsider the entitlement. That's all correct, Your Honor.  I would submit, Your Honor, that the reason we looked at it and were like, well, the fees, we didn't want to waste our time, the opponent's time, and the Court's time with the amount of the fees. What is clearly and plainly wrong here is that working your way backwards from their brief, their opening brief hits the nail on the head over and over and over again. Four times they say there was no claim for breach of contract brought under what's called the parking lot agreement. Right, but there were a lot of other claims with regard to the parking lot agreement. Right, but none of the – Which the Court could have found were either in a sumsit or arose from the parking lot agreement. Well, I hate to say yes and no, but yes and no, Your Honor. For example, we asserted a claim under Hawaii's consumer protection law and unfair competition law. That has a one-way street in favor of the plaintiff with regard to fees. And it's not appropriate for the district court or the opponent to say, well, even though you brought a Hawaii revised statutes Chapter 480 claim, we're going to say that's in the nature of a sumsit. No, it doesn't have to say that. It could say that there are claims which were covered by one of those two theories and either you didn't argue for an apportionment, which I don't think you did, or that it was impossible to apportion. Well, yeah, we did make that argument, and there were seven claims that were brought. None of them had an entitlement to attorney's fees. There was none of them. In order to make an assumption – Right. What we were asking for in the parking lot in which the judge found that we were asking for in the parking lot is, hey, landlord, defendant, please approve our parking plan. That wasn't like an IOU. I'm demanding money as a breach of this contract. We're saying, please do what you said you were going to do and approve this parking plan. That's not in the nature of a sumsit under Hawaii law, which is a breach of contract claim basically saying, you owe me money because you breached the contract. Here we're saying, give us the approval for the parking lot. And I think that's the problem is if you look at those seven claims, there's nothing in there that says this is a sumsit claim. It's just not there. And when they – throughout their opening brief, page after page, they're saying, there is no claim for breach of the parking agreement contract. That's true. But then once they want fees, they go, well, you know, this stuff all kind of had to fuzzily somehow do with a breach of contract claim. So with respect to the district court judge, the magistrate district judge, they can't have their cake and eat it too and say, there is no claim-based contract for the parking lot agreement. There were other claims that were brought that are statutory claims that don't have entitlement to fees. But now that they're asking for fees, we're going to shoehorn a claim in on that. Finally, Your Honor, the court, I'd just like to note that obviously the district court got it right. And with regard to Your Honor's questions, I have that same question myself. This seems very odd to me that if you negligently do one type of negligent thing, somehow it survives this. But there are multiple California cases saying that. And the district court didn't deal with them at all. And your brief doesn't deal with them at all. Right. And I understand that. The other problem – California is free to do odd things. They've done it before. That line goes very well here in Hawaii, especially lately. But yes, I'm just saying it's very unusual. However, it doesn't make a difference in this case because Mr. Herbod, who – and, you know, I've known Mr. Chip Chase for years. He's a great advocate. But to describe a Maui Inn owner as this guy that somehow took advantage of a guy who was about to buy an NBA team and is this Wheeler dealer all across the country is preposterous. And unlike a normal summary judgment, we called him as an adverse witness. And among other things, he said at trial, we had the land as a backstop because it's only $10 million for three years. So I understand all that. But, I mean, it seems to make you have a he said, he said sort of back and forth here. So why doesn't it need to be – I mean, I remember when I was just reading the – before I read any other materials, when I was just reading the magistrate judge's decision, I was like, it seems like he's deciding disputed issues of material fact at the summary judgment stage. Why is that? You might win. You might have a good chance of winning at trial. Well, I hear you, Your Honor, and that's kind of one of the other things looking at the practicalities here. We will go back to the same magistrate judge. He's already seen these people testify, and he heard him make – I thought somebody said it wasn't the same magistrate judge actually. I think Mr. Chip Chase and I agree that it will go back to Judge Porter. Well, maybe I'm wrong. I've been thinking about another case, but I thought in at least one of our cases the magistrate judge was no lower than the magistrate judge, but that could be wrong. Yeah, he was appointed fairly recently within the last couple of years, and I don't think either side has asked for, like, a recusal or anything like that. So the problem that they have is when there are these very clear agreements and also what happened, what we contend – yeah, they're trying to describe my client as a shyster. We're trying to contend what we think actually happened, which is, of course, these guys knew that Mr. Baskin had problems with the County of Maui, which is a very long story. Won't bother the court with it unless they want to hear it. But what actually happened is before they signed either one of these deals, they had their very large law firm, Baker Botts, say, Mr. Herbott, you have all these problems with the County of Maui. Now let's enter into these two deals. So to say that they trusted, relied upon, thought anything of this guy is preposterous. And Mr. Herbott is incredibly sophisticated. And the killer is you got 300 acres of land, beautiful land, on Maui right across the street from a public beach park. And as we said throughout this case, would you like to rescind the deal? Would you like to rescind the deal? Of course they don't want to rescind the deal because they know it's a great deal. In Mr. Herbott's own words, 300 acres of land in Paia, Maui, Hawaii is incredibly valuable. So there's not going to be any damages here at the end of the day. And when it's going back to the same person who obviously has at least an inclination after seeing Mr. Herbott testify, I think that we'll be doing, frankly, both sets of clients a disservice to have him come back. And the one thing I would like to point out about – and I understand that they said, gee, we didn't fully present our case. But when there's a judicial admission there of, hey, this backstop made the deal incredibly valuable anyway, why are we going through a trial just to reach the same result? And that's all I have, unless your honors have any questions. Thank you. Thank you. Mr. Gyptos, you have just over a minute left. Thank you, Your Honor. There is Ninth Circuit precedent. Squarely on point with respect to LLCs, we cited that it's new gen LLC. An LLC is a citizen of every state in which its members are citizens. We meet that test and so meet diversity. With respect to attorney's fees, there's also a case on point. It's called Jensen. We cited that too. Forecloses plaintiff's challenge here is premature to the award of attorney's fees. There's other cases on point with respect to the merits, though, and that's Kahala Royal, which clearly holds that promissory estoppel is in the nature of a sumsit. And contrary to the representations at bar here, plaintiffs pursued damages with respect to their promissory estoppel claim. That's in the record at PER 310 and 311, specific to the promissory estoppel claim. It's also in the prayer at 1323. I should have said 1310 and 1311 and then 1323. They also sought attorney's fees. With respect to the counterclaim, counsel spent the bulk of his argument arguing the facts. That's what the trial was for. The district court should not have resolved those on summary judgment. And it is quite correct that not only did we not examine our witnesses with respect to the counterclaim, we didn't call other witnesses with respect to the counterclaim that we would have done if we had been provided the opportunity to do so at trial. Based on the record before the court, we would ask that the court reverse as to the entry of judgment on our counterclaim and affirm the district court in all other respects. Thank you. Thank you. Thank both counsel for the arguments and the cases submitted. And we are adjourned for the day.
judges: BERZON, MILLER, VANDYKE